## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RONALD P. BERTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 24-1750 (ABJ) |
| | ) |
| DISTRICT OF COLUMBIA *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM OPINION**

Plaintiff sued the District of Columbia and D.C. contractor Unity Health Care, Inc., in the Superior Court of the District of Columbia, alleging unconstitutional and negligent medical care during his pretrial detention at the D.C. Jail. *See* Am. Compl., Dkt. # 18. The District of Columbia removed the case under the federal question provision of 28 U.S.C. § 1441(a); *see* Not. of Removal, Dkt. # 2-1 at 2, citing Counts IV, V, VIII, and X of the Amended Complaint. It now moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment under Rule 56. Def.'s Mot., Dkt. # 7. The Court agrees that plaintiff has failed to state a federal claim. So it will grant the District's motion to dismiss for the reasons explained below and, declining to exercise supplemental jurisdiction, will remand the case to D.C. Superior Court.[1]

---

[1]  The removal statute authorizes a federal court to "decline to exercise supplemental jurisdiction" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Although the decision to maintain jurisdiction over the pendant claims is discretionary, "the court may (and indeed, ordinarily should) kick the case to state court" since "federal law is" no longer "where the real action is." *Royal Canin U. S. A., Inc. v. Wullschlege*r, 604 U.S. 22, 32 (2025) (parenthesis in original).

## BACKGROUND

### A.  Factual Allegations

Plaintiff alleges that on an unspecified day in July 2021, he "seriously injured" his left knee "while participating in a friendly game of basketball" at the D.C. Jail.  Am. Compl. at 3 ¶ 10. Plaintiff "reported his injury to the on-duty correctional officers" who in turn "contacted the jail medical department[.]"  *Id*. ¶ 11.  "Medical employees appeared on the scene and took" plaintiff by wheelchair to the Jail's infirmary where he was x-rayed and kept overnight for observation. *Id*. ¶ 12.  The next morning, plaintiff questioned why he was kept in a medical cell without seeing a doctor; he was informed by Jail guards that "medical staff told them that as long as [he] was unable to walk, he could not be released back to population, let alone his Cellblock."  *Id*. ¶ 14. Not "long after" complaining to security personnel "about not being seen by a doctor" and being kept in a medical cell, "nursing staff brought" plaintiff "a walking cane and said he was to return to his unit."  *Id*. at 4 ¶ 15.  Plaintiff "complained [that] he was in serious pain and could not walk, even with a cane, due to extensive swelling of his leg, which was even obvious to [ ] medical staff[.]"  *Id*. ¶ 15.

From July 2021 to September 2021, plaintiff continued to raise "concerns about his leg," including "extensive swelling," and "the need for pain medication."  *Id*. ¶ 17.  Medical staff "directed" plaintiff to purchase pain medication from the commissary, "despite the severe swelling of his leg and inability to walk."  *Id*. ¶ 18.  "Between September and November of 2021," plaintiff was transported to Howard University Hospital where, following a magnetic resonance imaging (MRI), an orthopedic surgeon determined that plaintiff "had a torn ACL in his left leg knee and recommended surgery."  *Id*. at 4-5 ¶ 19.  At some point, plaintiff was transported back

to D.C. Jail where he was "forced" to walk without "his walking cane for security reasons" and because "correctional officers said the medical staff told them" that plaintiff needed neither a cane nor a wheelchair.  *Id*. at 5 ¶ 20.

"Between" December 2021 and January 2022, plaintiff "was taken back to Howard University Hospital for surgery on his torn ACL." *Id*. ¶ 21.  He was transported "from the surgical room" to the medical ward of the District's Correctional Treatment Facility "for post operational recuperation and physical therapy." *Id*. ¶ 22.  The orthopedic surgeon recommended physical therapy allegedly because of "the unnecessary delay in emergency care by D.C. Jail Officials." *Id*. ¶ 23.  Plaintiff saw a physical therapist on two occasions between January and February 2022, "and was sent back to D.C. Jail to continue his therapy." *Id*. ¶ 24.  While housed at the Jail's Central Detention Facility, plaintiff saw a physical therapist "approximately 10 times, based on five-to-ten-minute sessions in a six-month period, then it" stopped suddenly without explanation or notice.  *Id*. at 6 ¶ 25.  "Between July and August of 2022," plaintiff "went back to sick-call and asked why his physical therapy" was stopped; he was told "that he agreed to cancel his treatment, which he denied."  *Id*. ¶ 26.  After initiating a grievance "[b]etween July and September 2022 . . . over [that] false claim," plaintiff was told by a D.C. Jail nurse that "he would be resubmitted back" to "his physical therapy treatment when it became obvious [that] he was suffering from acute dysfunction in his knee, which was still painful."  *Id*. ¶¶ 27-28.

In April 2023, following his conviction and sentence to life imprisonment, *United States v. Berton*, No. 2019 CF1 003141 (D.C. Super. Ct. Mar. 17, 2023), plaintiff was placed in federal custody and transferred to a Bureau of Prisons facility without having received any more physical therapy or visited an orthopedic surgeon "about his continuing problems."  Am. Compl. at 6 ¶ 29;

*see* Dkt. # 7 at 30-37, Def.'s Undisputed Material Facts ("Def.'s Facts") ¶ 5 (documenting that "[p]laintiff was housed at the D.C. Jail from at least 2019 . . . until he was transferred to federal custody on April 13, 2023").

### B. Grievance History

Plaintiff's Grievance File, Dkt. # 7-2, pins down the broad time frames alleged in the amended complaint.   On September 17, 2021, plaintiff submitted "an informal grievance about his knee injury."   Def.'s Facts ¶ 32, citing Grievance File at 2; *see id*. ¶¶ 22-31 (describing four-step Department of Corrections Inmate Grievance Procedure).   In a response dated September 23, 2021, marked "Grievance Resolved," the Inmate Grievance Coordinator wrote: "x-ray completed 9/8/2021, no show for chronic care 9/21/2021," plaintiff "was seen" by "urgent care 9/18, 9/19/2021," and the "provider completed assessment [and] advised" plaintiff "to elevate his leg." Dkt. # 7-2 at 2.   Further, plaintiff was provided Ibuprofen and Bactrim "for prevention of infection" and was "rescheduled" for chronic care."   *Id*.

Eleven months later, on August 25, 2022, plaintiff submitted a formal grievance "about his physical therapy appointments," stating: "I have not been going to physical therapy nor to my outside doctor's appointments as required."   Def.'s Facts ¶¶ 34-35, citing Grievance File at 3; *see* Am. Compl. ¶ 27 ("Between July and September of ("2022"), the plaintiff initiated his grievance process over the false claim he had voluntarily ended his physical therapy sessions").   On August 27, 2022, the Department of Corrections (DOC) responded that the appointments were cancelled because plaintiff's "unit was on a Center for Disease Control and Department of Health mandated COVID-19 quarantine"; however, plaintiff's physical therapist had been notified of his inquiry and would schedule an appointment for him.   *Id*. ¶¶ 36-38.   On September 4, 2022, plaintiff

4

submitted a Level-1 appeal of that response and "further alleged that his injury was 'not developing healing or strengthening like the doctor ordered.' "  Def.'s Facts ¶¶ 39-41, citing Grievance File at 4 (Level-1 response).   On September 26, 2022, plaintiff submitted a Level-2 appeal stating that he "went once more to physical therapy only to be told that [he] would not be coming any longer" and that he "still" had not seen his doctor at Howard University Hospital "as May appointments" were "canceled."   Grievance File at 5.   DOC denied the Level-2 appeal essentially as premature since the time for deciding the Level-1 appeal had not expired.   Def.'s Facts ¶ 45, citing Grievance File at 6.

On October 4, 2022, the Warden responded to plaintiff's Level-1 appeal, "confirming that plaintiff had been scheduled for an outside doctor['s] appointment and had seen a physical therapist on September 15, 2022."   *Id.* ¶ 46, citing Grievance File at 4.   The Level-1 response describes the physical therapist's positive assessment of plaintiff's knee and mobility and an agreed upon treatment plan where plaintiff would "continue with [his] independent exercise regimen."   Given his improvement, plaintiff was "discharged from physical therapy."   Dkt. # 7-2 at 4.   DOC has no record of plaintiff's submitting "a timely Level-2 Appeal regarding his physical therapy appointments," Def.'s Facts ¶ 49, or an informal or formal grievance about the other acts of misconduct alleged in the amended complaint, *id.* ¶¶ 50-51.

## C.  Procedural History

On March 21, 2023, plaintiff filed a complaint in D.C. Superior Court, Dkt. # 1-2, which he amended on June 4, 2024, Dkt. # 18.   On June 20, 2024, the District removed the case to this court based on the following four counts of the ten-count Amended Complaint.[2]

---

[2]  Unity Health Care, an independent private contractor, has neither joined in the removal nor

In Count Four, titled "Fourteenth and Eighth Amendment," plaintiff alleges that "[t]he practice and custom of denying all inmates Class-A or Class-B pain medication due to . . . cost saving measures and other political motives violated plaintiff's rights to be free from cruel and unusual punishment, amounting to torture[.]"  Am. Compl. at 8 ¶ 33.

In Count Five, also titled "Fourteenth and Eighth Amendment," plaintiff alleges that "[t]he practice and custom of denying D.C. Jail inmates use of a wheelchair while under a chronic-care disability and an injury during the relevant times outlined in this complaint violates plaintiff's rights to be free from cruel and unusual punishment, thereby forcing [him] to endure excruciating pain and suffering to move around, that amounts to torture."  *Id.* ¶ 34.

In Count Eight, titled "First, Fourteenth and Eighth Amendments," plaintiff alleges that "[t]he actions of defendants District of Columbia, Unity Heath Care Corporation and those unknown having Mr. Berton transferred out of the D.C. Jail into Federal Bureau of Prisons Custody and Control violated [his] right to physical therapy in retaliation for pursuing grievance complaints against [them]."  *Id.* ¶ 37.

In Count Ten, titled "Fourteenth Amendment Due Process," plaintiff alleges that defendants conspired "to deprive" him "of his right to file a complaint under a practice and custom to evade liability claims" by, among other things, "withholding the City Notice requirements . . . from inmates . . . out of the jail handbook[.]"  *Id.* at 12 ¶ 39.

Plaintiff seeks compensatory and punitive damages and equitable relief.  *See id.* at 13-16.

On August 5, 2024, the District filed the instant dispositive motion asserting that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and that the complaint fails to state a claim under 42 U.S.C. § 1983 and for municipal liability. Plaintiff filed an opposition, *see* Dkt. # 16, and the District filed a reply, Dkt. # 12.

―――――――――――――――

consented to this Court's jurisdiction.

**LEGAL STANDARD**

In evaluating a motion to dismiss under Rule 12(b)(6), the court must "treat the complaint's factual allegations as true . . .  and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' " *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see Warren v. District of Columbia*, 353 F.3d 36, 39-40 (D.C. Cir. 2004) (differentiating unacceptable conclusions of law from acceptable conclusions of fact).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted)).  Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [the party's] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C .Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  In ruling on a motion to dismiss for failure to state a claim, a court may also

consider documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015), citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

## ANALYSIS

Because the PLRA's exhaustion requirement "is not jurisdictional," *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), and the window for plaintiff to exhaust his claims with DOC has long closed, the Court will address only the viability of the constitutional claims. *See* 42 U.S.C. § 1997e(c) ("In the event that a [prisoner's] claim . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

Section 1983 provides a cause of action against "[e]very person" who violates the Constitution or federal law while acting "under color of" State law. 42 U.S.C. § 1983. A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991). A municipality like the District of Columbia is subject to liability under § 1983 "for constitutional torts arising from 'action pursuant to official municipal policy.' " *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 691 (D.C. Cir. 2009), quoting *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997). In considering whether a plaintiff has sufficiently pleaded municipal liability, the Court must determine first "whether the complaint states a claim for a predicate constitutional violation" and, only if so, "whether the complaint states

a claim that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

In its opening brief, the District argues correctly that the Eighth Amendment does not apply to pretrial detainees, *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983), and the Fourteenth Amendment does not apply to the District of Columbia, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Def.'s Mem of P. & A. ("Def's Mem"), Dkt. # 7 at 13-14. Plaintiff concedes as much in his opposition, asserting instead a "5th Amendment Due Process Clause Violation While a Pre-Trial Detainee."[3] Pl.'s Opp'n at 14; *see Harris v. Bowser*, 60 F.4th 699, 702 (D.C. Cir. 2023), citing *Bolling*, 347 U.S. at 499 ("Fifth Amendment protections apply to D.C."). To bolster his claim, plaintiff posits that "the conservative medical treatment was ineffective and delayed the plaintiff from receiving adequate medical care to address his knee injury within the window that would save him a lifetime of recurring knee problems." Pl.'s Opp'n at 15. He opines that "the continued decisions not to perform a complete examination and not to refer the plaintiff to an outside medical specialist for an MRI or anything else, for over several weeks or more is deliberately indifferent." *Id.* The District counters that plaintiff has not stated a plausible Fifth Amendment claim. Def.'s Reply, Dkt. # 12 at 3-4. While this should not be interpreted as a statement concerning the adequacy of plaintiff's troubling description of his medical care, the Court agrees that he has not stated a Fifth Amendment claim.

The Fifth Amendment's Due Process Clause guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. The

---

[3] Plaintiff has not opposed, and thus concedes, the District's valid arguments for dismissing the First Amendment retaliation claim. *See* Def.'s Mem. at 20-22; Order, Dkt. # 8 (informing plaintiff that an unopposed argument in support of dismissal may be treated as conceded).

"core of the liberty protected by the Due Process Clause" is the "liberty from bodily restraint." *Harris*, 60 F.4th at 701. Since pretrial detainees "have not been convicted, the government may not impose restrictions that are intended to punish. Instead, restrictions must be reasonably related to a legitimate government objective." *Id.* at 702 (citations omitted); *see Youngberg v. Romeo*, 457 U.S. 307, 322 (1982) (pretrial detainees are presumed innocent and thus "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish").

"In evaluating the constitutionality of conditions or restrictions of pretrial detention, . . . the proper inquiry is whether those conditions amount to punishment of the detainee," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), mindful that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense," *id.* at 537. A restriction that is "rationally related to a legitimate nonpunitive governmental purpose" and not "excessive in relation to that purpose" will survive Fifth Amendment scrutiny. *Id.* at 561.

When addressing the conditions of his confinement, plaintiff points to the decision to deny him a wheelchair or cane on one occasion and decisions about his medical care, such as the lack of physical therapy after surgery. Plaintiff alleges that on a return trip from the hospital to the D.C. Jail "between September and November" of 2021, he was "forced" to walk on "his busted leg" because (1) he "was not permitted to use his walking cane for security reasons" and (2) the "correctional officers said the medical staff told them" that he "did not need" a cane or wheelchair. Am. Compl. ¶ 20. As a result, plaintiff suffered "excruciating pain." *Id.* ¶ 34. But ["[e]nsuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both," *Bell*, 441 U.S. at 561, and plaintiff has not

alleged sufficient facts about the duration of his pain and the length of time he was without necessary walking aids to support a reasonable inference that what appears to have been a one-time restriction was excessive in relation to the Jail's legitimate security interest or "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015); *see Banks v. Booth*, 459 F. Supp. 3d 143, 152 (D.D.C. 2020) (concluding that "[t]ogether *Kingsley* and *Bell* provide persuasive authority that a pretrial detainee need only show that prison conditions are objectively unreasonable in order to state a claim under the due process clause"). Plaintiff's allegations about the delays and shortcomings in his medical treatment suggest "at most medical malpractice," a claim within the purview of D.C. Superior Court. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

More importantly, even if plaintiff has pled a Fifth Amendment violation, he has not plausibly alleged that the government caused or was the "the moving force behind the violation." *Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (citation omitted). To satisfy this second prong of municipal liability, plaintiff must identify "(1) an official policy explicitly adopted by D.C., (2) actions by a D.C. policymaker with final decision-making authority, (3) repeated behavior by D.C. municipal employees that have reached the level of a custom, *or* (4) a failure to act by D.C. that shows deliberate indifference to the potential for such violations," *id.*, citing *Baker*, 326 F.3d 1306, and allege an "affirmative link" between the municipal policy and his injury, *Baker*, 326 F.3d at 1306 (cleaned up).

In Counts Four and Five, plaintiff, citing his own conditions, asserts a "practice and custom of denying" (1) "all inmates Class-A or Class-B pain medication due to [ ] cost saving measures and other political motives" and (2) "D.C. Jail inmates the use of a wheelchair while under an [sic] chronic-care disability and an injury[.]" Am. Compl. ¶¶ 33-34. Plaintiff describes no case but

his own, and the complaint does not include facts supporting a plausible inference that D.C. Jail employees engaged in repeated behavior, much less "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Givens*, 111 F.4th at 122, citing *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 556-57 (the plaintiff must "plead facts that plausibly support one of [the] four types of municipal policies"). Further, plaintiff's description of his detention only undermines the requirement that the District knowingly ignored or acquiesced in unconstitutional behavior that caused his injury. *See Hurd v. District of Columbia*, 997 F.3d 332, 338 (D.C. Cir. 2021) ("To hold a municipality liable based on a pattern of similar constitutional violations, a plaintiff must show that the municipality 'knowingly ignore[d] a practice that was consistent enough to constitute custom.' ") (citation omitted)); *Blue v. District of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015), quoting *Baker*, 326 F.3d at 1306 (in pleading municipal liability, a plaintiff may point to " 'the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom' "). In other words, isolated or discrete "incident[s] of unconstitutional activity," even if true, are not "sufficient to impose [municipal] liability" absent a showing, not made here, that they were "caused by an existing, unconstitutional municipal policy." *Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015), quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

## CONCLUSION

For the reasons stated above, the Court, finding no federal claim stated, grants the District of Columbia's motion to dismiss under Rule 12(b)(6) and remands this case to D.C. Superior

Court.   There, plaintiff will still have the opportunity to pursue the claims concerning his medical

treatment and seek compensation for any harm he suffered.   A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 31, 2025